## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MECHANICAL EQUIPMENT COMPANY, INC.**          **CIVIL ACTION**

**VERSUS**                                                                      **NO. 10-2452**

**GMP SYSTEMS, INC.**                                                **SECTION "L" (1)**

## ORDER AND REASONS

Currently pending before the Court is Plaintiff Mechanical Equipment Company, Inc. ("MECO")'s motion to remand for lack of subject matter jurisdiction (Rec. Doc. 6) and Defendant GMP Systems Inc. ("GMP")'s motion to dismiss for lack of personal jurisdiction (Rec. Doc. 8). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

## I.      BACKGROUND

This case arises out of a contract between GMP and MECO for construction of a water purification system. GMP is a contractor based in Fairfield, New Jersey, that performs design and construction work for pharmaceutical companies. GMP's owner and president is Mr. Joseph Manfredi. MECO is a Louisiana corporation that manufactures and sells water purification systems. There is complete diversity of citizenship between the parties.

In 2008, GMP and MECO began discussing terms under which MECO would build a water purification system for eventual installation in a New Jersey pharmaceutical plant for Helvoet Pharma, which is not a party to this suit. Mr. Manfredi states that "a sales representative of MECO, based in Connecticut, called upon GMP" to discuss the contract. The record is not clear regarding the circumstances of that "call", but GMP states that it had no contact with MECO in Louisiana.

After the initial meeting, the parties exchanged several documents.  MECO submitted a bid proposal to GMP.  The MECO bid proposal describes the technical aspects of the water purification system as well as other proposed terms.  MECO's bid proposal provides that Louisiana law governs the contract, and that the parties submit to the jurisdiction of Louisiana for any dispute.  In response, GMP submitted a purchase order.  GMP's purchase order requests a "water treatment system . . . as technically described in [MECO's] proposal."  GMP's purchase order further states that "In accepting this, Seller agrees that this contract is made in the state in which this Purchase Order is issued by Buyer and that the laws of that state apply hereto."  A clause in GMP's purchase orders states that "[t]his order shall constitute the entire agreement between the parties unless modified in writing by both parties; provided, however, where express provisions on the front of this Purchase Order or in other written agreement between Buyer and Seller expressly referenced on the front of the Purchase Order are inconsistent with any terms . . . then said express provisions shall prevail."  In response to the purchase order, MECO evidently requested three changes to the terms and conditions.  The requested changes related to cancellation terms, warranty terms, and indemnity.  GMP alleges that it received MECO's request and accepted the proposed changes without modifying any other terms of the purchase order.  Mr. Manfredi states that all of these communications were between New Jersey, and either MECO's Sugar Land, Texas office or its Connecticut office

MECO subsequently began manufacturing the water purification system at its facility in Covington, Louisiana.  MECO asserts that during the course of manufacturing the purification system, GMP submitted three change orders to the Covington facility.  GMP asserts that it was directed to submit these change orders to Covington only after the project began.  Additionally, during the course of completion, a GMP project manager accompanied a Helvoet representative

2

to inspect the equipment in Covington.  MECO alleges that the equipment was eventually installed at Helvoet and is still in use.

On June 22, 2010, MECO filed suit against GMP for breach of contract in the 22nd Judicial District Court for the Parish of St. Tammany.  MECO alleges that GMP has failed to pay amounts due under the contract for construction of the purification system.  MECO prays for the full amount owed under the contract, costs, fees, and all other damage and legal and equitable relief the Court deems just.  On August 4, 2010, GMP removed the case to this Court on the basis of diversity jurisdiction.

## II.    PRESENT MOTIONS

The Court is presented with competing motions.  First, MECO filed a motion to remand (Rec. Doc. 6), asserting that removal was improper because the jurisdictional amount in controversy is not met.  MECO argues that it is suing only to enforce the contract to build the water purification system, which puts only an unpaid balance of $72,296.50 in controversy. Although MECO agrees that GMP owes an additional $8,000 for a service call related to the purification system, MECO contends that the $8,000 is owed pursuant to a separate deal and, as master of its complaint, it has elected not to pursue that claim against GMP.  Therefore, because only $72,296.50 in damages are sought, MECO contends that the amount in controversy is below the jurisdictional threshold.

GMP opposes MECO's motion to remand, asserting that the amount in controversy exceeds $75,000.  GMP relies on the affidavit of Mr. Manfredi stating that "the amount demanded by MECO pursuant to the contract at issue exceeds $80,000," as confirmed by the communications between them.  Essentially, GMP argues that the $8,000 service call is part of the same deal and therefore implicated by MECO's petition.  Therefore, the $8,000 unpaid on

3

the service call should be aggregated with the $72,296.50 unpaid for building the system, which exceeds the jurisdictional threshold.  MECO replies that it is the master of its complaint, that it has not brought suit on the separate contract for the service call, and that GMP cannot force it to assert any additional claims other than for the construction of the water purification system, which amounts only to $72,296.50.

Second, GMP has filed a motion to dismiss for lack of personal jurisdiction.  (Rec. Doc. 8-1).  GMP contends that this Court does not have jurisdiction over it because it lacks sufficient contacts with Louisiana.  *Id.*  GMP also denies the allegation in MECO's complaint that it consented to jurisdiction within Louisiana.  MECO opposes the motion, arguing that the Court has specific personal jurisdiction over GMP because GMP contractually submitted to jurisdiction, or because GMP has minimum contacts with Louisiana.

III.    **LAW AND ANALYSIS**

A.    **ORDER OF MOTIONS**

The parties disagree on whether this Court should first address MECO's motion to remand, or GMP's motion to dismiss. Both motions contest the jurisdiction of this Court to resolve the dispute: MECO's motion contests this Court's subject matter jurisdiction, while GMP's motion contests this Court's exercise of personal jurisdiction over GMP.

"Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry."  *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). Lower courts may "consider the complexity of subject-matter jurisdiction issues raised by the case, as well as concerns of federalism, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to

4

its subject-matter jurisdiction." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000). Therefore, the Court has a certain degree of discretion on how to proceed. Because the motion to remand is more easily decided than the motion to dismiss for lack of personal jurisdiction, the Court will address that motion first.

**B.     MOTION TO REMAND**

Diversity jurisdiction requires complete diversity of citizenship and more than $75,000 in controversy. 28 U.S.C. § 1332(a). "Louisiana prohibits plaintiffs from petitioning for a specific monetary amount" and the Fifth Circuit employs a specific framework for analyzing motions to remand to Louisiana state court. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removing defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Id.* The defendant  may satisfy its burden by either: (1) showing that it is facially apparent that the claim is likely to exceed $75,000, or (2) setting forth "summary judgment type evidence" of facts in controversy that support a finding of the jurisdictional amount. *Id.* "Where the district court is making the 'facially apparent' determination, the proper procedure is to look only at the face of the complaint and ask whether the amount in controversy [is] likely to exceed $[75,000]." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995). "In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal." *Id*. If a defendant satisfies its burden, the district court has jurisdiction unless it is apparent to a legal certainty that the plaintiff's claim is actually for an amount of $75,000 or less. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). Plaintiffs can show to a legal certainty that a claim is less than the jurisdictional amount by filing with their complaint a binding stipulation or

affidavit "stating that they affirmatively seek less than the jurisdictional threshold, and further stating that they will not accept an award that exceeds that threshold." *Ditcharo v. United Parcel Svc., Inc.*, 376 F. App'x 432, 437 (5th Cir. 2010); *Manguno*, 276 F.3d at 724; *De Aguilar*, 47 F.3d at 1412 & n.10.

In this case, it is not apparent from the face of the petition that the requisite amount in controversy is satisfied. The petition asserts only GMP's failure to pay $72,296.50 on a contract for "design and construction" of the water purification system. Accordingly, GMP must establish jurisdiction through "summary judgment type evidence."

Between them, the parties have furnished two pre-litigation emails that shed light on the amounts in controversy. First, there is a letter from a MECO employee to GMP stating that "MECO is resolute in pursuing payment for the $72,000 still owed to MECO for the equipment and the $8,000 still owed on the service call authorized by your company for installing the equipment." (Rec. Doc. 6-2 at 3). Second, there is an email from a different MECO employee to Mr. Manfredi, President of GMP, demanding remittance of a "past due balance of $80,296.50," which is the sum of a number of outstanding invoices. One of the enumerated invoices is for exactly $8,000. (Rec. Doc. 9-1). Additionally, GMP has provided an affidavit from Mr. Manfredi stating that "the amount demanded by MECO pursuant to the contract at issue exceeds $80,000," which he bases on GMP records not provided to the Court and "communications to GMP from MECO demanding such sums." (Rec. Doc. 9-1 at 1).

To reduce the amount in controversy below the jurisdictional amount, MECO argues that the contract to build the system and the contract for a service call were different agreements with GMP and that it has elected to sue only for breach of the former. While the pleading is clever, MECO parses its claims too finely. The letters establish that prior to filing suit, MECO

6

concluded that it was owed $80,296.50 for work arising out of the contract for the purification

system.  Only when it filed suit, when the $75,000 threshold became relevant, did MECO take

the position that it is owed only $72,296.50.  This summary judgment evidence satisfies GMP's

burden to show by a preponderance that the amount in controversy regarding the contractual

claim raised in MECO's petition is actually $80,296.50, in excess of the jurisdictional threshold.

Accordingly, the Court has jurisdiction unless MECO can show to a legal certainty that

the Court does not have subject matter jurisdiction.  In the Fifth Circuit, it is abundantly clear

how a plaintiff can make such a showing.  If MECO wanted to limit the scope of its state court

petition and pursue a claim worth $75,000 or less, it could have filed with its petition a binding

stipulation or affidavit that it did not seek more than the jurisdictional amount and that it would

not enforce a judgment for more than that amoun t.  *Ditcharo*, 376 F. App'x at 437; *Manguno*,

276 F.3d at 724; *De Aguilar*, 47 F.3d at 1412 & n. 10.  MECO did not do so; the mere allegation

in the petition that $72,296.50 is owed does not suffice.  Accordingly, it is not legally certain that

MECO cannot recover more than $75,000, and the Court has jurisdiction.  MECO's motion to

remand is DENIED.

## C.     Motion to Dismiss

To exercise personal jurisdiction over a non-resident defendant, the Court must establish

that the particular facts of the case fall within the forum state's long-arm statute and that the

assertion of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth

Amendment.  *See Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997).  The

Louisiana long-arm statute extends personal jurisdiction to the constitutional limits.  *See* La.

Rev. Stat. Ann. § 13:3201(B);  *Nuovo Pignone, SPA v. Stroman Asia M/V*, 310 F.3d 374, 378

(5th Cir. 2002) (stating Louisiana long-arm statute and Due Process Clause inquiry "merge into

7

one"); *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-243 (5th Cir. 2008).  Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945).

   "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."  *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices.  *Id.*  The Court "must resolve all undisputed facts submitted by the plaintiff, as well as facts contested in the affidavits, in favor of jurisdiction."  *Id.*

   **1.     Minimum Contacts**

    A determination that the defendants purposefully established minimum contacts in the forum state remains the "constitutional touchstone" of whether a court's assertion of personal jurisdiction over the defendants complies with the Due Process Clause of the Fourteenth Amendment.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  When a court makes the minimum contacts determination, it focuses on the defendant's actions.  In order to establish minimum contacts, the defendant must commit "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.* at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  A defendant purposefully avails itself to a forum state when it engages in actions that make it reasonable for it to anticipate being haled into court there.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

   "Minimum contacts" may be established through acts giving rise to general or specific

8

jurisdiction.  Specific jurisdiction "exists when the defendant has 'purposefully directed' his

activities at residents of the forum ... and the litigation results from alleged injuries that arise out

of or relate to those activities."  *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010)

(quotation omitted; alteration in original).  General jurisdiction may be established when a

defendant's contacts with the forum state are unrelated to the cause of action but are continuous

and systematic.  *Mink  v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).  It is uncontested

that general jurisdiction does not exist in the instant matter.

"An alleged contractual relationship between a plaintiff and a non-resident defendant

confers specific jurisdiction when the plaintiff's cause of action 'arises out of or is related to' the

contract at issue."  *Ochsner Clinic Found. v. Nicholas*, No. 06-10542, 2007 WL 2088383, at *2

(E.D. La. July 20, 2007) (quotation omitted).  But, "[a] contract with an out-of-state party alone,

although relevant, does not automatically establish sufficient minimum contacts."

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999).  "A

'highly realistic' approach is called for, recognizing that a contract is ordinarily but an

intermediate step serving to tie up prior negotiations and future consequences which themselves

are the real object of the business transaction."  *Id.*  The Court must consider "the following

factors surrounding the contract and its formation: (1) prior negotiations between the parties, (2)

contemplated future consequences of the contract, (3) the terms of the contract, and (4) the

parties' actual course of dealing."  *Burger King*, 471 U.S. at 479; *see also ICEE Distribs.*, 325

F.3d at 592; *Electrosource*, 176 F.3d at 872.

The second prong deals with the fairness of asserting jurisdiction over the defendant.

Once the plaintiff establishes that the defendant has minimum contacts with Louisiana, "the

burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair

or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir 2006)

(citing *Nuovo*, 310 F.3d at 382).  "The defendant must make a 'compelling case.'" *Id*. (citing

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  The court must "consider the

burden upon the nonresident defendant, the forum state's interest in the litigation, the plaintiff's

interest in securing  relief in that forum, 'the interstate judicial system's interest in obtaining the

most efficient resolution of controversies,' and 'the shared interest of the several States in

furthering fundamental substantive social policies.'" *ICEE Distribs.*, 325 F.3d 586, 593-94 (5th

Cir. 2003) (quoting *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 324 n.9 (5th Cir.

1996)).

　　　Here, there are meaningful Louisiana connections to the negotiations and agreement

between the parties and the course of performance.  MECO's bid proposal proposed a Louisiana

choice of law and forum selection clause, although the enforceability of that term is disputed.

The water purification system was manufactured in Louisiana and GMP representatives visited

the manufacturing facility.  GMP directed change orders to Louisiana.  However, the record is

less clear regarding the extent to which GMP was aware of those Louisiana connections at the

time the agreement was formed, or the intent of the parties regarding choice of law and forum

selection terms in their agreement.

　　　Limited discovery regarding the question of personal jurisdiction may serve to clarify

these factual questions.  Accordingly, GMP's motion to dismiss is denied at this time with leave

to re-file after 60 days of jurisdictional discovery.  Such discovery should relate to, among other

things, the knowledge of the parties regarding the nature and extent of MECO's manufacturing

activities in Louisiana and other foreseeable contacts between Louisiana and the contract at

issue, and the intent of the parties with respect to the choice of law and jurisdictional terms of the

contract.

**IV.     CONCLUSION**

For the foregoing reasons,

IT IS ORDERED that MECO's Motion to Remand is DENIED.

IT IS FURTHER ORDERED that GMP's Motion to Dismiss is DENIED, with leave to file again after 60 days of discovery related to the issue of personal jurisdiction.

New Orleans, Louisiana, this  7th  day of  February , 2011.


<br>


UNITED STATES DISTRICT JUDGE