UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MECHANICAL EQUIPMENT COMPANY, INC.                CIVIL ACTION

VERSUS                                             NO. 10-2452

GMP SYSTEMS, INC.                                  SECTION "L" (1)

ORDER AND REASONS

Currently pending before the Court is Defendant GMP Systems Inc. ("GMP")'s motion to dismiss for lack of personal jurisdiction (Rec. Doc. 26). The Court has reviewed the briefs and the applicable law and heard oral argument and now issues this Order and Reasons.

I.   BACKGROUND

This case arises out of a contract between GMP and Mechanical Equipment Company, Inc. ("MECO") for construction of a water purification system. GMP is a contractor based in Fairfield, New Jersey, that performs design and construction work for pharmaceutical companies. GMP's owner and president is Mr. Joseph Manfredi. MECO is a Louisiana corporation that manufactures and sells water purification systems and has offices outside of Louisiana. There is complete diversity of citizenship between the parties.

In 2008, GMP and MECO began discussing terms under which MECO would build a water purification system for eventual installation in a New Jersey pharmaceutical plant for Helvoet Pharma, which is not a party to this suit. Mr. Manfredi states that "a sales representative of MECO, based in Connecticut, called upon GMP" to discuss the contract. GMP states that prior to performance of the contract it had no contact with MECO in Louisiana.

After the initial meeting, the parties exchanged several documents. First, MECO submitted a bid proposal dated October 11, 2008, describing the system to be built, quoting price

and other terms, and stating that Louisiana law would apply and the parties would submit to jurisdiction of Louisiana courts:

> 1. The terms of contract stated herein constitutes the entire terms of sale between the buyer and seller, Mechanical Equipment Co., Inc. (MECO) hereto relating to the equipment offered and supersedes any prior agreements, and there are not terms, obligation, covenants, representations, statements, or conditions other than those contained herein. No variation or modification, or waiver of these terms shall be deemed valid unless in writing and signed by both parties.
> 2. The terms of contract entered into between the buyer and seller shall be governed by and interpreted under the laws of Louisiana, USA, and the parties submit to the jurisdiction of the Louisiana courts for any dispute or controversy, renouncing any other forum to which either of them might legally have access.

(Rec. Doc. 1-1). The front of the bid proposal listed a MECO address in Sugar Land, Texas; a "field service rate schedule" listed addresses in Sugar Land, Texas and Covington, Louisiana; and a "proprietary and confidential information" page listed an address in New Orleans, Louisiana. (Rec. Doc. 1-1 at 1, 8, 12). The bid proposal also stated that "This quote constitutes only solicitations for offer to purchase; further, budgetary quotations and estimates are for preliminary information only and shall neither constitute offers, nor impose any obligation or liability upon Seller." (Rec. Doc. 1-1 at 13).

In response to the bid proposal, GMP sent MECO a purchase order dated October 14, 2008, to the Sugar Land, Texas address. The purchase order consisted of a front page specifically referring to the MECO bid proposal, quoting a price for the system to be built listed certain "Terms and Conditions" including a New Jersey choice-of-law provision:

> 1. ENTIRE AGREEMENT: By accepting or filling this order Seller agrees to its terms and conditions, which shall prevail over any inconsistent provisions in any form or other paper submitted by Seller. This order shall constitute the entire agreement between the parties unless modified in writing by both parties; provided, however that where express provisions on front of this Purchase Order or in any other written agreement between Buyer and Seller expressly referenced

>on the front of this Purchase Order are inconsistent with any terms of paragraphs 1 through 25 hereof, then said express provisions shall prevail.  This contract may not be assigned without Buyer's prior written consent.
>
>In accepting this order, Seller agrees that this contract is made in the state in which this Purchase Order is issued by Buyer and that the laws of the state apply hereto.  Seller also agrees that title to all goods and materials passes when Buyer accepts delivery from carrier.

(Rec. Doc. 10-1.)

MECO responded to that purchase order with a letter to Manfredi dated October 28, 2008, on letterhead from MECO's office in Sugar Land, Texas.  The letter stated "We have completed our review of your purchase order and associated terms and conditions" and "The following changes are requested to the purchase order's T&C's."  (Rec. Doc. 8-2 at 6).  Those changes related to cancellation terms, warranties, and indemnity, and did not address choice of law or forum selection.  (Rec. Doc. 8-2).  In response to the October 28, 2008 letter, GMP sent a letter dated November 7, 2008 to MECO's Sugar Land, Texas, office, which stated as follows:

>We are in receipt of your October 28, 2008 letter.  We do accept your suggested changes however it is not our intention to modify our written existing terms and conditions.
>This letter will serve as acknowledgment and acceptance of your suggested changes and will serve as a change order to our purchase order.

(Rec. Doc. 8-2).  None of these communications were sent to or from Louisiana.

MECO subsequently began manufacturing the water purification system at a facility in Covington, Louisiana.  The parties have submitted factually consistent affidavits regarding GMP's contacts with Louisiana during the performance of the contract.  A representative of GMP physically traveled to Louisiana to inspect the water purification equipment during the construction.  GMP sent three change orders addressed to the Covington, Louisiana facility. MECO sent invoices from its Covington facility to GMP, which were paid at least in part.

3

MECO alleges that the equipment was eventually installed in New Jersey and is still in use.

On June 22, 2010, MECO filed suit against GMP for breach of contract in the 22nd Judicial District Court for the Parish of St. Tammany.  MECO alleges that GMP has failed to pay amounts due under the contract for construction of the purification system.  MECO prays for the full amount owed under the contract, costs, fees, and all other damage and legal and equitable relief the Court deems just.  On August 4, 2010, GMP removed the case to this Court on the basis of diversity jurisdiction.

On February 7, 2011, the Court issued an Order and Reasons (Rec. Doc. 18) denying MECO's motion to remand to state court based on an insufficient amount in controversy and denying GMP's motion to dismiss for lack of personal jursidiction, with leave to re-file the latter motion after jurisdictional discovery.  The Court stated that "there are meaningful Louisiana connections to the negotiations and agreement between the parties and the course of performance," although "the record is less clear regarding the extent to which GMP was aware of those Louisiana connections at the time the agreement was formed, or the intent of the parties regarding choice of law and forum selection terms in their agreement."  Accordingly, the Court ordered limited jurisdictional discovery relating to "among other things, the knowledge of the parties regarding the nature and extent of MECO's manufacturing activities in Louisiana and other foreseeable contacts between Louisiana and the contract at issues, and the intent of the parties with respect to the choice of law and jurisdictional terms of the contract."

The parties had some difficulty with the discovery.  The Court denied a motion for default judgment and ordered that the discovery be completed by May 20, 2011, and ordered GMP to file an answer or a renewed motion to dismiss for lack of personal jurisdiction.

**II.    PRESENT MOTION**

Defendant GMP now renews its motion to dismiss for lack of personal jurisdiction.  It argues that after having had an opportunity for jurisdictional discovery, MECO still has yet to produce or cite any evidence or testimony suggesting that GMP knew at the time it entered into the contract that there were any Louisiana connections to the contract.  GMP contends that its contacts with Louisiana only occurred much later when the contract was being performed, and therefore it was not foreseeable to GMP at the time it entered into the contract that it could be sued in Louisiana.

Plaintiff MECO argues in response that its initial bid proposal contained a Louisiana choice-of-law and forum-selection clause, and that during the performance of the contract GMP had numerous contacts with Louisiana relating to the contract.  Therefore, MECO argues that there are sufficient contacts to establish a prima facie case of personal jurisdiction over GMP in Louisiana.

### III.    LAW AND ANALYSIS

#### A.    Personal Jurisdiction

To exercise personal jurisdiction over a non-resident defendant in a diversity case, the Court must establish that the particular facts of the case fall within the forum state's long-arm statute and that the assertion of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.  *See Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999).  The Louisiana long-arm statute extends personal jurisdiction to the constitutional limits.  *See* La. Rev. Stat. Ann. § 13:3201(B); *Nuovo Pignone, SPA v. Stroman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-243 (5th Cir. 2008).  Due process requires that "(1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with

the forum state, and (2) exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Walk Haydel*, 517 F.3d at 243.

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). In the absence of an evidentiary hearing, the court must "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Latshaw*, 167 F.3d at 211. "Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Id.* Denying a motion to dismiss for lack of personal jurisdiction does not relieve a plaintiff of "its ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence." *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 399 (5th Cir. 2009).

A determination that a defendant purposefully established minimum contacts in the forum state remains the "constitutional touchstone" of whether a court's assertion of personal jurisdiction over the defendants complies with the Due Process Clause of the Fourteenth Amendment. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). When a court makes the minimum contacts determination, it focuses on the defendant's actions. In order to establish minimum contacts, the defendant must commit "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A defendant purposefully avails itself to a forum state when it engages in actions that make it reasonable for it to anticipate being haled into court there. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"Minimum contacts" may be established through acts giving rise to general or specific jurisdiction. Specific jurisdiction "exists when the defendant has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (quotation omitted; alteration in original). General jurisdiction may be established when a defendant's contacts with the forum state are unrelated to the cause of action but are continuous and systematic. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). It is uncontested that the Court does not have general personal jurisdiction over GMP.

"An alleged contractual relationship between a plaintiff and a non-resident defendant confers specific jurisdiction when the plaintiff's cause of action 'arises out of or is related to' the contract at issue." *Ochsner Clinic Found. v. Nicholas*, No. 06-10542, 2007 WL 2088383, at *2 (E.D. La. July 20, 2007) (quotation omitted). But, "[a] contract with an out-of-state party alone, although relevant, does not automatically establish sufficient minimum contacts." *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999). "A 'highly realistic' approach is called for, recognizing that a contract is ordinarily but an intermediate step serving to tie up prior negotiations and future consequences which themselves are the real object of the business transaction." *Id.* The Court must consider "the following factors surrounding the contract and its formation: (1) prior negotiations between the parties, (2) contemplated future consequences of the contract, (3) the terms of the contract, and (4) the parties' actual course of dealing." *Burger King*, 471 U.S. at 479; *see also ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 592 (5th Cir. 2003); *Electrosource*, 176 F.3d at 872.

The second prong deals with the fairness of asserting jurisdiction over the defendant. Once the plaintiff establishes that the defendant has minimum contacts with Louisiana, "the

burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Nuovo*, 310 F.3d at 382). "The defendant must make a 'compelling case.'" *Id.* (citing *Burger King*, 471 U.S. at 477). The court must "consider the burden upon the nonresident defendant, the forum state's interest in the litigation, the plaintiff's interest in securing relief in that forum, 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *ICEE Distribs.*, 325 F.3d at 593-94 (quoting *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 324 n.9 (5th Cir. 1996)).

**B.     Analysis**

    **1.     Minimum Contacts**

In this breach of contract suit, the court must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 479.

        **i.     Prior Negotiations Between the Parties**

There does not appear to be a factual dispute regarding the negotiations and pre-contract communications between the parties. GMP, a New Jersey entity, communicated with a MECO representative based in Connecticut and with MECO's office in Sugar Land, Texas. The MECO bid proposal stated that Louisiana law would apply and disputes would be heard exclusively in Louisiana courts, and contained two references to contact addresses for MECO in Covington, Louisiana, and New Orleans, Louisiana.

The prior negotiations between the parties raised the specter of contact with Louisiana.

MECO attempted to bind GMP to a Louisiana forum-selection clause (although, as discussed below, that term is not part of the parties' contract). The bid proposal also contained just as many references to Louisiana addresses for MECO as it did to Texas addresses. Thus, the negotiations were not devoid of implicit contacts with the State of Louisiana. Although GMP may not have inquired further about those Louisiana connections, they were flagged during the negotiations.

### ii. Contemplated Future Consequences of the Contract

MECO contracted to build a water purification system for GMP, for installation in New Jersey. After initial discussions, MECO submitted a bid proposal, contemplating that the construction will occur at MECO's factory and allowing for inspection at MECO's factory. The shipping terms are FOB MECO's factory. Although MECO's factory was apparently not disclosed to be in Louisiana, it is clear that GMP did not believe the machinery would be built in New Jersey. Thus, the contract contemplated a substantial portion of performance to be done somewhere other than New Jersey.

Additionally, GMP's purchase order contemplates some degree of future communication with MECO. "[W]hen a nonresident defendant voluntarily enters into a contract which contemplates business activity by a forum-state entity foreseeable to the nonresident defendant" the contract supports the exercise of jurisdiction. *Cent. Progressive Bank v. Harvey*, No. 08-4035, 2009 WL 901770, at *4 (E.D. La. Mar. 27, 2009) (quotation omitted). The record suggests that GMP first learned in February, 2009 that the water purification system factory was being built in Covington, Louisiana. However, the future consequences as contemplated did not rule out Louisiana as the building site. Thus, this factor does not constitute a strong contact with Louisiana, but it also does not weigh against exercise of jurisdiction.

9

### iii.    Terms of the Contract

The parties dispute whether the contract between them included consent to jurisdiction in Louisiana. As set forth above, MECO submitted a bid proposal dated October 11, 2008 which contained a purported Louisiana choice-of-law and forum-selection provision. However, by its terms the bid proposal "constitute[d] only solicitations for offer to purchase" and the "budgetary quotations and estimates are for preliminary information only and shall neither constitute offers, nor impose any obligation or liability upon Seller." Thus, the bid proposal was not an offer and the Louisiana choice-of-law and forum-selection provisions could have been accepted by GMP and could not have become any part of the eventual agreement between MECO and GMP.

Furthermore, GMP's responsive purchase order expressly stated that "By accepting or filling this order Seller agrees to its terms and conditions," and that it was "the entire agreement between the parties." Although it did contain a provision which would incorporate inconsistent terms found in a prior written agreement expressly referenced in the purchase order, MECO's bid proposal alone does not constitute an "other written agreement between" the parties. Thus, MECO's purported Louisiana provisions were not incorporated by reference. Indeed, in responding to GMP's purchase order, MECO stated that "changes are requested *to the purchase order's T&C's*." (Rec. Doc. 8-2 at 6) (emphasis added). Thus, GMP's terms and conditions formed the basis of the agreement between the parties. Accordingly, it is GMP's New Jersey choice-of-law provision, not MECO's Louisiana choice-of-law and forum-selection terms, that control.

However, GMP's terms and conditions addressed only the law that governs the contractual relationship and where the contract was made, not where the contract may be enforced through suit. Although GMP may not have consented to suit in Louisiana, the contract

10

does not forbid it or require jurisdiction in some other forum. Thus, this factor does not weigh for or against exercise of personal jurisdiction over GMP in Louisiana.

### iv. Actual Course of Dealing

Finally, the facts regarding the course of performance of the contract as established by the parties through affidavits are undisputed, although the parties dispute the legal effect of those facts. MECO constructed the water purification equipment at its facility in Covington, Louisiana. A representative of GMP physically traveled to Louisiana to inspect the water purification equipment during the construction. GMP sent three change orders addressed to the Covington, Louisiana facility. MECO sent invoices from its Covington facility to GMP.

Because the water purification system was built in Louisiana, MECO argues that personal jurisdiction over GMP is warranted. "The place where the contract is performed is a 'weighty consideration' in ascertaining whether or not specific jurisdiction is properly exercised." *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993) (quoting *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992)). The parties both agree that MECO constructed the water purification system at its factory located in Covington, Louisiana. (Rec. Doc. 8-1). Thus, construction of the system, which is a large part of the contract, occurred in Louisiana and that "weighty consideration" supports the exercise of personal jurisdiction. *Id*.

Although MECO may not have expressly declared that the system would be built in Louisiana, GMP's communications with Louisiana and physical visit through a representative are also relevant contacts that support assertion of personal jurisdiction over GMP. *See Lionheart Development, LLC v. Apex Bldg. Sys., LLC*, No. 08-4070, 2009 WL 35348, at *3 (E.D. La. Jan. 5, 2009). A defendant's physical presence within a forum enhances the defendant's

11

contacts with the forum state, though communications are themselves significant. *See Burger King*, 471 U.S. at 476 (1985).

Here, although the scope of the role Louisiana would play in the contractual performance may not have been fully apparent at the outset, GMP was made aware relatively early in the course of performance. Having been made aware, it purposefully and directly communicated with MECO in Louisiana, paid invoices sent from Louisiana, sent a representative to Covington in connection with the contract, and purposefully availed itself of the privilege of conducting business in Louisiana. These were deliberate contacts with the forum, and they weigh heavily in favor of finding personal jurisdiction.

### v. Summary

On the whole, the evidence relevant to these factors supports the conclusion that MECO has established a *prima facie* case for the exercise of personal jurisdiction over GMP. From the outset of negotiations, there were references to MECO's connections with Louisiana, including addresses on the paperwork and an attempt to make a Louisiana forum-selection clause a part of the contract between the parties. Although that term did not become part of the agreement, there was enough to put GMP on notice that it could be entering into a contract that would cause performance to be made in Louisiana. Indeed, during the course of performance GMP discovered those substantial contacts with Louisiana. GMP purposefully directed communications and personnel to Louisiana in connection with the contract. Although the extent of Louisiana's involvement may not have been clear at first, resolving factual disputes and inferences in favor of MECO at this stage as the Court must, there were enough contacts with Louisiana that GMP cannot be surprised to have been sued in Louisiana on the contract. Accordingly, the Court concludes that MECO has established a *prima facie* case for exercise of

personal jurisdiction over GMP.

### 2.     Traditional Notions of Fair Play and Substantial Justice

Next, the Court must consider the fairness of asserting jurisdiction over GMP.  MECO has made a *prima facie* showing, and accordingly the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable."  *Seiferth*, 472 F.3d at 271.  "The defendant must make a 'compelling case.'" *Id*. (citing *Burger King*, 471 U.S. at 477).  The court must "consider the burden upon the nonresident defendant, the forum state's interest in the litigation, the plaintiff's interest in securing relief in that forum, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  *ICEE Distribs.*, 325 F.3d at 593-94 (5th Cir. 2003) (quotations omitted).

Exercising personal jurisdiction over GMP is not unfair or unreasonable.  The contract was performed in Louisiana by a Louisiana entity, and accordingly the forum state has an interest in the litigation.  Although litigating in Louisiana may be some burden on GMP, an New Jersey entity, the Court cannot conclude on this record that GMP's burden significantly outweighs MECO's interest in securing relief in this forum.

### IV.     CONCLUSION

For the foregoing reasons,

IT IS ORDERED that GMP's Motion to Dismiss is DENIED.

New Orleans, Louisiana, this  1st  day of  August , 2011.

_____
UNITED STATES DISTRICT JUDGE